**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

VOTER VERIFIED, INC., a Florida
corporation,

        Plaintiff,

v.

PREMIER ELECTION SOLUTIONS, INC.,
a Delaware corporation, and DIEBOLD,
INCORPORATED, an Ohio corporation,

        Defendants.

_____/

Case No. 6:09-cv-1968-19KRS

INJUNCTIVE RELIEF AND
JURY TRIAL REQUESTED

**COMPLAINT**

The Plaintiff, VOTER VERIFIED, INC., sues the Defendants, PREMIER ELECTION SOLUTIONS, INC. and DIEBOLD, INCORPORATED, and says:

PARTIES

1.    The Plaintiff, VOTER VERIFIED, INC. ("VVI"), is a corporation organized and existing under the laws of the State of Florida.

2.    The Defendant, PREMIER ELECTION SOLUTIONS, INC. ("PES"), is a corporation organized and existing under the laws of the State of Delaware, and is licensed to do business in the State of Florida.

3.    The Defendant, DIEBOLD, INCORPORATED ("DIEBOLD"), is a corporation

organized and existing under the laws of the State of Ohio, and is licensed to do business in the State of Florida.

4. DIEBOLD is the ultimate parent entity of Diebold Election Systems Holding Company, Inc., a Delaware general corporation organized on June 24, 2002.

5. DIEBOLD is the ultimate parent entity of Global Election Systems, Inc. ("GES"), a Delaware general corporation organized on December 6, 1991, which, on March 18, 2002, changed its name to Diebold Election Systems, Inc. ("DES"), and, on September 12, 2007, changed its name to Premier Election Solutions, Inc. ("PES").

6. DIEBOLD was until September 2, 2009 the ultimate parent entity of PES by virtue of its acquisition of GES in 2002.

7. DIEBOLD is the ultimate parent entity of Data Information Management Systems, Inc., ("DIMS"), a California corporation organized on February 9, 1981, which provides information technology resources to PES and its customers, by virtue of having acquired the capital stock and/or assets of DIMS on or about January 23, 2003.

8. DIEBOLD is the ultimate parent entity of Premier Canada, a vendor of voting machines and election systems to Canadian jurisdictions.

9. On September 2, 2009 DIEBOLD and Election Systems and Software, Inc. ("ES&S") entered into an agreement in which ES&S would acquire from DIEBOLD all the outstanding capital stock of PES and DIMS and the assets of Premier Canada.

10. On September 3, 2009 Diebold filed Form 8-K with the United States Securities and Exchange Commission disclosing that it had sold the capital stock of PES and DIMS and the assets of Premier Canada to ES&S.

11. There is presently pending in the United States District Court for the District of Delaware an action by Hart Intercivic, Inc. against ES&S and DIEBOLD for antitrust violations under Section 16 of the Clayton Act, 15 U.S.C. § 26, Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 2 of the Sherman Act, 15 U.S.C. § 2, C.A. No. 1:09-cv-678, seeking the following relief: a declaration that the September 2, 2009 acquisition violates Section 7 of the Clayton Act, 15 U.S.C. § 18; a temporary order enjoining DIEBOLD and ES&S from proceeding to integrate the acquired companies into the operations of ES&S and requiring DIEBOLD and ES&S to hold the assets acquired in the transaction separate during the pendency of that litigation; and a permanent injunction requiring ES&S to divest its interests in PES, Premier Canada and DIMS and require a novation of the September 2, 2009 acquisition agreement.

12. The future ownership of PES by ES&S is therefore uncertain and contingent on the outcome of said pending civil antitrust action.

## JURISDICTION AND VENUE

13. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *etseq.,* of United States Patent Nos. 6,769,613 ("the '613patent") and RE40,449 ("the '449 patent"), copies of said United States Patents being attached hereto as **Exhibits A and B,** respectively.

14. This Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§1331 and 1338(a).

15. PES is subject to the jurisdiction of this Court by reason of having received a license to do business in the State of Florida and having appointed a resident agent for service of

process in the State of Florida.

16. DIEBOLD is subject to the jurisdiction of this Court by reason of DIEBOLD having received a license to do business in the State of Florida and having appointed a resident agent for service of process in the State of Florida.

17. The Middle District of Florida is a proper venue for this action against PES under 28 U.S.C. §§ 1391(c) and 1400(b), in that PES is subject to personal jurisdiction in the Middle District of Florida, and thus is deemed to reside in the Middle District of Florida for purposes of venue.

18. The Middle District of Florida is a proper venue for this action against DIEBOLD under 28 U.S.C. §§ 1391(c) and 1400(b), in that DIEBOLD is subject to personal jurisdiction in the Middle District of Florida, and thus is deemed to reside in the Middle District of Florida for purposes of venue.

19. Venue is proper under 28 U.S.C. §§ 1391(c) and/or 1400(b), in that some of the events giving rise to the claims of VVI occurred in the Middle District of Florida.

20. PES has infringed, and is continuing to infringe said United States Patents by making, selling, offering to sell, importing, exporting, and/or using within and throughout the United States of America certain voting systems and equipment that practice certain voting methods claimed in said United States Patents, to wit: the AccueView Printer Module used in combination and/or systematized with the AccuVote®-TSX or other direct recording electronic voting machines.

21. DIEBOLD has infringed said United States Patents by selling the capital stock of infringing entities under its control, PES and DIMS, and the assets of Premier Canada, to ES&S; and by the operation of infringing entities.

22. DIEBOLD is continuing to infringe the '449 patent by receiving revenue from certain accounts receivable transferred to ES&S for collection, such accounts receivable being a product of the infringement of said infringing entities.

## BACKGROUND

23. On December 7, 2000 Co-Inventors Michael R. McDermott and Anthony I. Provitola filed the Application for United States Patent with the United States Patent and Trademark Office (USPTO) entitled "Auto-Verifying Voting System and Voting Method", which was assigned the Application Serial Number 09/732,324 by the USPTO, according to the Co-Inventor supplied post card mailed by the USPTO on December 19, 2000, a copy of which is attached hereto as **Exhibit C**.

24. On January 19, 2001 Co-Inventor, Michael R. McDermott, assigned all of his right, title, and interest in and to United States Patent Application No. 09/732,324 to Co-Inventor, Anthony I. Provitola, the Assignment of Application evidencing said transfer, a copy of which is attached hereto as **Exhibit D**, being recorded with the USPTO on March 28, 2001, thereafter announced in the USPTO Official Gazette (hereinafter OG), and electronically published by the USPTO on its Internet website www.uspto.gov at Patents>Search Patents>Patent Number Search>6,769,613.

25. On June 13, 2002 the USPTO issued the Notice of Publication of Application for United States Patent Application No. 09/732,324 stating that said Application had been published electronically in accordance with 37 CFR 1.211.

26. On August 3, 2004 the '613 patent was issued by the USPTO, following the mailing of the Notice of Allowance of United States Patent Application No. 09/732,324 on April 7, 2004,

and was published by the USPTO on its Internet website www.uspto.gov at Patents>Search Patents>PatentNumberSearch>6,769,613[http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO1 &Sect2=HITOFF&d=PALL&p=1&u=%2Fnetahtml%2FPTO%2Fsrchnum.htm&r=1&f=G&l=50 &s1=6,769,613.PN.&OS=PN/6,769,613&RS=PN/6,769,613]).

27. On August 27, 2004 Mr. Terry M. Sanks, Attorney at Law sent a letter to Mr. Thomas Swidarski, Senior Vice President of Diebold Election Systems, Inc., now PES, on behalf of Autoverify Voting Systems, LLC, the contractual licensing organization authorized by Co-Inventor Anthony I. Provitola for the '613 patent, a copy of which is attached hereto as **Exhibit E**, covering a copy of the '613 patent and requesting the opening of negotiations for non-exclusive licensing of the '613 patent.

28. Mr. Thomas Swidarski remained the Senior Vice President of Diebold Election Systems, Inc. after August 27, 2004, until he became the President and Chief Executive Officer of DIEBOLD in 2006;

29. PES acknowledged receipt of said letter (Exhibit E) by a letter dated September 16, 2004 from Ms. Nancy L. Reeves, Attorney at Law with the law firm of Walker & Locke, a copy of which is attached hereto as **Exhibit F**.

30. On December 2, 2004 Co-Inventor, Anthony I. Provitola filed a Request for Certificate of Correction, and on February 1, 2005 the Director of the USPTO issued the Certificate of Correction thereupon that became a part of the '613 patent, a copy of which is attached hereto as **Exhibit G**.

31. On February 14, 2005 Co-Inventor, Anthony I. Provitola filed a Reissue Application, assigned Serial Number 11/062,351, with the USPTO claiming the benefit of United States Patent


Application No. 09/732,324, with child continuity therefrom.

32. On May 3, 2005 the USPTO announced the filing of said Reissue Application in the USPTO OG issued for week 18 of 2005 pursuant to 37 CFR 1.11(b).

33. In conjunction with said announcement in the USPTO OG, said Reissue Application became open to inspection by the public by electronic publication in the USPTO Public Patent Application Information Retrieval (Public PAIR)system.

34. Upon Public PAIR publication of said Reissue Application, the parent continuity from United States Patent Application No. 09/732,324 was included, and the child continuity of said Reissue Application was included in the Public PAIR publication of the '613 patent;

35. On August 5, 2008 the '613 patent was reissued as the '449 patent (Exhibit B) by the USPTO to Co-Inventor, Anthony I. Provitola following the mailing of the Notice of Allowance of said Reissue Applicaton on May 9, 2008.

36. On June 1, 2009 Co-Inventor, Anthony I. Provitola filed a Request for Certificate of Correction to the '449 patent, and on July 7, 2009 the Director of the USPTO issued the Certificate of Correction thereupon, a copy of which is attached hereto as **Exhibit H**, which became a part of the '449 patent.

37. The '449 patent included an amended Claim 49 of the '613 patent (as corrected by the Certificate of Correction issued on July 7, 2009 (Exhibit H)), which is substantially identical to the original Claim 49 in the '613 patent.

38. On November 12, 2009 Co-Inventor, Anthony I. Provitola assigned all of his right, title and interest in and to the '613 patent and the '449 patent to VVI, including all rights to recover by legal action any claims for infringement that had accrued prior to said transfer, by execution of

the Assignment of Patent, a copy of which is attached hereto as **Exhibit I**.

## CLAIMS FOR RELIEF FOR INFRINGEMENT OF UNITED STATES PATENTS

### COUNT I - PES

39. VVI incorporates herein by reference the allegations set forth in paragraphs 1-38 of this Complaint as though fully set forth herein.

40. VVI is the owner by assignment (Exhibit I) of the entire right, title, and interest in and to said United States Patents, entitled "AUTO-VERIFYING VOTING SYSTEM AND VOTING METHOD", including all rights to recover by legal action any claims for infringement that had accrued to the owner of said United States Patents prior to said Assignment.

41. PES has infringed said United States Patents, and is continuing to infringe the '449 patent, by making, using, selling, advertising, and/or offering for sale in the United States, and/or importing and/or exporting, voting machines and systems that embody and/or practice the invention claimed in said United States Patents, with full knowledge of said United States Patents, including the amended and new claims thereof.

42. PES has been infringing said United States Patents and has continued to infringe the '449 patent under 35 U.S.C. § 271(b) by actively inducing direct infringement by end-users who use voting systems and methods that embody and/or practice the invention claimed in said United States Patents.

43. PES has the specific intent to encourage direct infringement of said United States Patents by end-users who use voting systems and methods that embody and/or practice the invention claimed in said United States Patents.

44. PES actions, including their sales, advertising, and instructions, induced direct infringement by the end-users who use voting systems and methods that embody and/or practice the invention claimed in said United States Patents.

45. PES knew or should have known that its actions would induce direct infringement by end-users who operate and/or use voting systems and methods that embody and/or practice the invention claimed in said United States Patents.

46. PES has been infringing said United States Patents and is continuing to infringe the '449 patent under 35 U.S.C. § 271(c) by contributing to the direct infringement by end-users who operate and/or use voting systems and methods that embody and/or practice the invention claimed in said United States Patents.

47. The voting systems and methods and components thereof sold, made and/or operated by PES constitute a material part of the invention claimed in said United States Patents and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

48. At all times pertinent hereto PES knew that the voting systems and methods and components thereof were being used by the end-user as a material part of the invention claimed in said United States Patents.

49. PES failed to obtain a license for the invention claimed in the '613 patent after having been given an opportunity to do so, and willfully and deliberately proceeded to conduct its business without such a license and with infringement of said United States Patents, all with full and complete knowledge of the legal effect of said United States Patents.

50. As a direct and proximate result of infringement of said United States Patents, VVI has been and continues to be damaged in an amount yet to be determined.

51.     Continued willful and deliberate infringement of said United States Patents as herein alleged is likely unless enjoined by this Court in view of the failure of PES to obtain a license for the invention claimed in said United States Patents after having been given an opportunity to do so, and proceeding to conduct its business without such a license and with infringement of said United States Patents, all with full and complete knowledge of the legal effect of said United States Patents.

52.     Unless enjoined and restrained by this Court, the willful infringement of said United States Patents by PES, together with the acquisition of PES by ES&S, is likely to cause irreparable injury to VVI with respect to the licensing of said United States Patents to competitors of PES in the voting systems market as by: influencing the decisions of potential licensees as to whether or not to obtain a license from VVI under said United States Patents in order to compete with PES in the voting systems market; and by impeding any licensing negotiations of VVI with such potential licensees; all of which cannot be adequately compensated or measured in money.

53.     VVI has no adequate remedy at law, and is therefore entitled to injunctive relief enjoining and restraining PES and its subsidiaries, officers, agents, servants, and employees, and all persons acting in concert with them, and each of them, from further infringement of the '449 patent.

54.     All conditions precedent to bringing this action have occurred or been performed.

PRAYER FOR RELIEF - COUNT I

WHEREFORE, VVI prays for judgment against PES as follows:

A.      for a judicial determination and declaration that PES has infringed United States Patent Nos. 6,769,613 and RE40,449;

B.      for a judicial determination and decree that infringement of United States Patent Nos. 6,769,613 and RE40,449 by ES&S was done willfully;

C.      for damages resulting from the past and present infringement of United States Patent Nos. 6,769,613 and RE40,449, and the trebling of such damages because of the willful and deliberate nature of the infringement by PES;

D.      for permanent injunctive relief enjoining against further infringement of United States Patent No. RE40,449 by PES, and its subsidiaries, their officers, directors, shareholders, agents, servants, employees, and all other entities and individuals acting in concert with them or on their behalf;

E.      for an assessment of prejudgment interest on damages;

F.      for a declaration that this is an exceptional case under 35 U.S.C. § 285 and for an award of attorneys fees and costs in this action; and

G.      for such other and further relief as the Court deems just and equitable.

## COUNT II - DIEBOLD

55.     VVI incorporates herein by reference the allegations set forth in paragraphs 1-54 of this Complaint as though fully set forth herein.

56.     Having the knowledge that PES had failed to obtain a license for the invention disclosed by said United States Patents after having been given an opportunity to do so, and that PES had willfully and deliberately proceeded to conduct its business without such a license and willfully and deliberately continued its infringement of said United States Patents as stated in Paragraphs 41-53 of this Complaint, DIEBOLD also willfully and deliberately infringed said United States Patents by

the operation of said infringing entities as hereinabove stated, and by selling in the United States of America the capital stock of PES and DIMS, and the assets of Premier Canada to ES&S, and by the continuing operation of said infringing entities as hereinabove stated.

57.     DIEBOLD is continuing to infringe the '449 patent by receiving revenue from certain receivables transferred to ES&S for collection, said receivables accruing from transactions resulting from infringing activities of PES as stated hereinabove.

58.     All conditions precedent to bringing this action have occurred or been performed.

## PRAYER FOR RELIEF - COUNT II

WHEREFORE, VVI prays for judgment against DIEBOLD as follows:

A.     for a judicial determination and declaration that DIEBOLD has infringed United States Patent Nos. 6,769,613 and RE40,449;

B.     for a judicial determination and decree that infringement of United States Patent Nos. 6,769,613 and RE40,449 by DIEBOLD was done willfully;

C.     for damages resulting from the past and present infringement of United States Patent Nos. 6,769,613 and RE40,449, and the trebling of such damages because of the willful and deliberate nature of the infringement by DIEBOLD;

D.     for permanent injunctive relief enjoining against further infringement of United States Patent No. RE40,449 by DIEBOLD, and its subsidiaries, their officers, directors, shareholders, agents, servants, employees, and all other entities and individuals acting in concert with them or on their behalf;

E.     for an assessment of prejudgment interest on damages;

    F.    for a declaration that this is an exceptional case under 35 U.S.C. § 285 and for an award of attorneys fees and costs in this action; and

    G.    for such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure VVI hereby demands a trial by jury of all issues triable of right by a jury.

DATED: November 19, 2009                        Respectfully submitted,

                                                  **s/Anthony I. Provitola**
                                                  Anthony I. Provitola
                                                  Florida Bar No. 95290
                                                  Attorney for Plaintiff, VVI
                                                  ANTHONY I. PROVITOLA, P.A.
                                                  Trial Counsel
                                                  Post Office Box 2855
                                                  DeLand, Florida 32721
                                                  (386) 734-5502 - Telephone
                                                  (386) 736-3177 - Facsimile
                                                  aprovitola@cfl.rr.com