**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**VOTER VERIFIED, INC.,**

        **Plaintiff,**

**-vs-**                                                       **Case No. 6:09-cv-1968-Orl-19KRS**

**PREMIER ELECTION SOLUTIONS, INC.,**
**DIEBOLD INCORPORATED,**

        **Defendants.**

_____

## ORDER

This case comes before the Court on the following:

1. Motion and Memorandum in Support of Invalidity of Claim 49 of U.S. Patent No. RE40,449 by Premier Election Solutions, Inc. and Diebold Incorporated (Doc. No. 161, filed Nov. 9, 2010);

2. Response in Opposition to Defendants' Motion for Summary Judgment by Voter Verified, Inc. (Doc. No. 167, filed Dec. 9, 2010); and

3. Reply in Support of Invalidity of Claim 49 of U.S. Patent No. RE40,449 by Premier Election Solutions, Inc. and Diebold Incorporated (Doc. No. 171, filed Dec. 23, 2010).

**Background**

**I. Procedural History**

On November 19, 2009, Voter Verified, Inc. ("VVI") filed the present action against Premier Election Solutions, Inc. and Diebold Incorporated (collectively "Defendants"). (Doc. No. 1.) The Complaint, seeking both damages and injunctive relief, alleges that the Defendants willfully infringed

United States Patents Nos. 6,769,613 ("the '613 patent") and RE40,449 ("the '449 patent"). (*Id.* at 11-12.) Defendants deny VVI's allegations of infringement and seek a declaratory judgment that: (1) the '613 and the '449 patents are invalid pursuant to 35 U.S.C. §§ 101, 102, 103, and 112; (2) the '613 patent is invalid pursuant to 35 U.S.C. § 251; and (3) Defendants are not infringing and have never infringed the '613 and '449 patents. (Doc. No. 16, filed Jan. 16, 2010; Doc. No. 103, filed Apr. 28, 2010.)

On April 28, 2010, VVI filed a Motion for Summary Judgment arguing that there were no genuine issues of material fact relating to the direct infringement of claim 49 of the '613 and '449 patents. (Doc. No. 106 at 1.) VVI also moved for summary judgment on the validity of the asserted patents and the issue of intervening rights. (*Id.*) On May 28, 2010, Defendants responded in opposition to VVI's summary judgment motion and filed a Cross Motion for Summary Judgment, contending that: (1) the '613 patent cannot be infringed because it was surrendered; (2) claims 49, 56, 85, 93, and 94 of the '449 patent are not infringed; and (3) claims 49, 56, 85, 93, and 94 of the '449 patent are invalid as anticipated under 35 U.S.C. § 102. (Doc. No. 124.) Plaintiff's Motion for Summary Judgment was denied in part and granted in part. (Doc. No. 155 at 34-36.) Defendants' Cross Motion for Summary Judgment was also denied in part and granted in part, and the Defendants were granted leave to file a supplemental summary judgment motion addressing the issue of obviousness. (*Id.* at 39.)

On November 9, 2010, Defendants filed the present Motion and Memorandum in Support of Invalidity of Claim 49 of U.S. Patent No. RE40,449 and the Declaration of Defendants' Expert Michael I. Shamos, Ph.D., J.D. Concerning Obviousness of Claim 49 ("Shamos Obviousness Declaration"). (Doc. Nos. 161-62.) On December 9, 2010, Plaintiff filed a response in opposition

to the summary judgment motion, (Doc. No. 167), and the Defendants filed a reply on December 23, 2010 (Doc. No. 171).

## II.  The Asserted Patents

The patents at issue in the present case include the '613 and '449 patents (collectively, the "Asserted Patents"). The '613 patent issued on August 3, 2004. (Doc. No. 60 at 2.) On February 14, 2005, co-inventor Anthony Provitola filed a reissue application for the '613 patent. (*Id*.) On August 5, 2008, the '613 patent was surrendered to the United States Patent and Trademark Office ("PTO") and reissued as the '449 patent. (*Id*. at 3.) VVI is the owner by assignment of both the '613 and '449 patents. (*Id.* at 4.)

In general, the Asserted Patents involve a computer voting system that displays ballots for voting, instructs voters to input their selections, prints the votes of the voters, instructs the voters to review the printed ballots for accuracy, and then instructs the voters to submit acceptable printed ballots for tabulation. Claim 49 of the '449 patent is the only claim at issue in the present summary judgment motion. Claim 49 recites:

> 49. A method of voting providing for self-verification of a ballot comprising the steps of:
>     (a) voting by a vector using a computer voting station programmed to present an election ballot, accept input of votes from the vector according to the election ballot, temporarily store the votes of the voter;
>     (b) printing of the votes of the voter from the votes temporarily stored in the computer for the voting station;
>     (c) comparison by the voter of the printed votes with the votes temporarily stored in the computer for the voting station;
>     (d) decision by the voter as to whether a printed ballot is acceptable or unacceptable;
>     (e) inputting of information as to the acceptability of a printed ballot by the voter; and
>     (f) submission of an acceptable printed ballot for tabulation.

**III. The Prior Art**

The documents presented in support of the Defendants' summary judgment motion include four articles published in The Risk Digest in 1986. (Doc. No. 164.) The first article, posted by Tom Benson, describes an electronic voting system that allows a voter to review a printed ballot for accuracy before the vote is electronically confirmed (the "Benson Article"). (Doc. No. 161-1 at 2-3.) The second article, posted by Michael McLaughlin, describes a voting system wherein a voter receives a printed receipt displaying the names of the candidates the voter selected (the "McLaughlin Article"). (*Id*. at 1-2.) The voter can then review the printed receipt for accuracy and request a corrective procedure in the event of an error. (*Id*.) The third article, posted by Kurt Hyde, proposes a security standard for voting involving a voting booth that prints a paper ballot for voters to review (the "Hyde Article"). (Doc. No. 162-2 at 1-2.) The paper ballot is then retained by the voting system for use in auditing the accuracy of the voting system's computer. (Doc. No. 162-1 at 2.) The fourth article, posted by Jim McGrath (the "McGrath Article"), is a response to the Hyde Article suggesting the use of a red printed ballot as the official ballot because a red ballot is difficult to forge or void. (Doc. No. 162-3 at 1-2.)

In addition to the Risk Digest articles, the Defendants present two other references. The first reference, titled "Performance and Test Standards for Punchcard, Marksense, and Direct Electronic Voting Systems" was published by the Federal Election Commission in 1990 ("FEC Standards"). (Doc. No. 162-4.) The FEC Standards discuss the use of a printed paper ballot in conjunction with direct recording electronic devices ("DRE"). (*Id*.) The second reference, authored by Dr. Rebecca Mercuri, is titled "Physical Verifiability of Computer Systems" (the "Mercuri Paper"). (Doc. No.

162-5.) The Mercuri Paper discusses the use of printed paper ballots in conjunction with DRE voting machines. (*Id*.)

## Standard of Review

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). A dispute of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. An dispute of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.  In addition, when a claimant fails to produce "anything more than a repetition of his conclusory allegations," summary judgment for the movant is "not only proper but required." *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

## Analysis

### I. Leave to File the Present Motion for Summary Judgment

In their Cross Motion for Summary Judgment, the Defendants requested leave to file a supplemental summary judgment motion on the issue of obviousness.  (Doc. No. 124 at 24.)  The Court granted the Defendants' request in the Order entered on September 15, 2010 ("September 15 Order").  (Doc. No. 155.)  VVI now contends that granting the Defendants leave to file a supplemental summary judgment motion violated the Court's own rulings and was an abuse of discretion.  (Doc. No. 167 at 2.)  In support of this contention, VVI cites the Order entered on March 5, 2010 sustaining the striking of Plaintiff's multiple summary judgment motions.  (Doc. No. 85.)

It is well established that "a district court has the inherent authority to manage and control its own docket 'so as to achieve the orderly and expeditious disposition of cases.'" *Equity Lifestyle Prop., Inc. v. Fla. Mowing and Landscape Serv., Inc.*, 556 F.3d 1242, 1240 (11th Cir. 2009) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 41 (1991)).  Thus, a district court may exercise its discretion in managing the filings of summary judgment motions.  *E.g., Wilson v. Farley*, 203 F. App'x 239, 250 (11th Cir. 2006) (citing the district court's inherent authority to manage its own docket in upholding an order directing the parties to refrain from filing motions for summary judgment until the expiration of the discovery process).

In the present case, the Case Management and Scheduling Order directs that "[t]he motion for summary judgment and supporting memorandum of law shall be presented in a single document of not more than twenty-five pages. Local Rule 3.01(a)." (Doc. No. 78 at 6.) However, the Case Management and Scheduling Order also provides that a party may file a motion, not to exceed three pages, requesting leave to file excess pages or a further memorandum in accordance with Local Rule 3.01(d). (*Id*.) Thus, in affirming the Order to Strike VVI's successive summary judgment motions, the Court noted that "[i]f VVI wishes to file successive summary judgment motions or to file a motion for summary judgment in excess of twenty-five pages, VVI must first request the Court's permission by filing a motion in accordance with Local Rule 3.01(d)." (Doc. No. 94 at 5.)

Here, the Defendants requested leave to file a supplemental motion for summary judgment in accordance with the Case Management and Scheduling Order and Local Rule 3.01(d). (Doc. No. 124.) As set forth in the Case Management and Scheduling Order and the Order entered on March, 22, 2010, VVI was free to file a similar motion, (Doc. Nos. 78, 94), and VVI's decision not to file such a motion does not render the Defendants' request improper. (Doc. No. 106.) Accordingly, the Order granting the Defendants leave to file the present Motion and Memorandum in Support of Invalidity of Claim 49 of U.S. Patent No. RE40,449 (Doc. No. 161) was not an abuse of discretion or otherwise in violation of the Court's own rulings as suggested by VVI.

**II. Rule 26 Disclosures**

VVI next contends that the Defendants violated Federal Rule of Civil Procedure 26 on a number of occasions and incorporates by reference the arguments previously raised in the motions filed at Docket Numbers 131, 143, 149, and 157. (Doc. No. 167 at 5.) VVI does not, however,

contend that the Defendants violated Rule 26 by failing to disclose any documents or witnesses not already discussed in the Court's previous orders.[1] Accordingly, VVI's arguments regarding the Defendants' Rule 26 disclosures are denied for the reasons previously set forth in the orders entered at Docket Numbers 153, 155, and 174.

**III. The Mercuri Paper - Prior Art**

VVI next contends that the Mercuri Paper does not qualify as prior art because the paper could not be searched or otherwise located by keywords related to the voting process and was previously considered by the examiner during the prosecution of the '449 patent. (Doc. No. 167 at 12.) In response, the Defendants maintain that the Mercuri Paper was published as part of the "Proceedings: Fifth International Computer Virus & Security Conference," and that the previous consideration of the paper by the examiner does not eliminate the reference as prior art. (Doc. No. 171 at 5.)

When a reference qualifies as a printed publication within the meaning 35 U.S.C. § 102(b), that reference may be used for the purpose of analyzing the validity of a patent under 35 U.S.C. § 103.[2] Whether an asserted reference qualifies as a printed publication under § 102(b) is a question of law based on the underlying facts of each particular case. *Cordis Corp. v. Boston Scientific Corp.*,

---

[1] VVI contends that the Defendants failed to comply with Rule 26 with respect to the documents filed with the Shamos Obviousness Declaration. However, this issue was previously addressed in the September 15 Order as well as the Order entered on August 9, 2010. (Doc. Nos. 153, 155.) Pursuant to the Case Management and Scheduling Order and Federal Rule of Civil Procedure 26(a)(2)(C), the Defendants need not have disclosed the identity of Shamos or his expert report prior to April 1, 2011. (Doc. No. 78 at 1.)

[2] Section 102 provides that "[a] person shall be entitled to a patent unless . . . (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States." 35 U.S.C. § 102(b).

561 F.3d 1319, 1332-33 (Fed. Cir. 2009). When no facts are in dispute, the question of whether a reference represents a printed publication is a question of law. *In re Klopfenstein*, 380 F.3d 1345, 1347 (Fed Cir. 2004) (citing *In re Cronyn*, 890 F.2d 1158, 1159 (Fed. Cir. 1989)).

A reference "must have been sufficiently accessible to the public interested in the art" in order to qualify as a printed publication. *Id.* at 1349 (internal citation omitted). "Because there are many ways in which a reference may be disseminated to the interested public, 'public accessibility' has been called the touchstone in determining whether a reference constitutes a 'printed publication' under 35 U.S.C. § 102." *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986). The public accessibility of a reference must be evaluated on a case-by-case basis in light of the "facts and circumstances surrounding the reference's disclosure to members of the public." *Klopfenstein*, 380 F.3d at 1350. A reference is publicly accessible if it was "disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, [could] locate it." *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1350 (Fed. Cir. 2008) (internal quotation omitted).

In the present case, the Defendants contend that the Mercuri Paper qualifies as a printed publication because the undisputed evidence demonstrates that the paper was published as part of the "Proceedings: Fifth International Computer Virus & Security Conference" held in New York on March 11-13, 1992. (Doc. No. 171 at 5.) In support of this contention, the Defendants cite the Shamos Obviousness Declaration, wherein Shamos states that the paper was presented at the Fifth International Computer Virus & Security Conference in March 1992. (Doc. No. 162 ¶ 25.) Shamos also states that the Mercuri Paper was a "printed publication that appeared in the proceedings of the conference," (*id*.), and the copy of the paper submitted with the Shamos Obviousness Declaration

states in the bottom corner of each page "Proceedings: Fifth International Computer Virus & Security Conference," (Doc. No. 162-5). However, the evidence in record is insufficient to support a finding that the Mercuri Paper constitutes a printed publication within the meaning of 35 U.S.C. § 102 because there is no evidence relating to the manner in which the paper or the proceedings from the conference were published, nor is there evidence to establish how the paper was made available to persons interested in the art, or how a person interested in the art would have been able to locate it. As a result, the Court is unable to determine whether the Mercuri Paper was "disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, [could] locate it." *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1350 (Fed. Cir. 2008) (internal quotation omitted). Accordingly, the Mercuri Paper does not qualify as prior art, and the Court will not consider the Mercuri Paper in analyzing the validity of claim 49 pursuant to the pending Motion for Summary Judgment..

**IV. The Risk Digest Articles - Prior Art**

VVI next maintains that the Risk Digest articles do not qualify as prior art because the Defendants failed to present evidence that these documents are printed publications within the meaning of 35 U.S.C. § 102. (Doc. No. 167 at 9.) However, these arguments were previously considered and rejected by the Court in the September 15 Order to the extent the Court determined that the Benson, McLaughlin, and Hyde Articles qualify as prior art.[3] (Doc. No. 155 at 9.) While

---

[3] VVI contends that the Risk Digest articles fail to qualify as prior art because the various experts in the field were not personally aware of the documents during the relevant time period. However, a person of ordinary skill in the art is a *hypothetical* person who is *presumed to be aware* of all of the pertinent art. *In re GPAC, Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995). Thus, particular experts in the field need not be aware of a prior art reference in order for that reference to qualify as prior art.

VVI contends that no evidence was presented by the Defendants to establish that these articles were available on a searchable database, the Declaration of Lindsay Marshall specifically states that the Risk Digest website included a search tool that allowed users to search both current and archived articles, as noted in the Order entered on September 15, 2010.[4]  (Doc. No. 155 at 9 (citing Doc. No. 146 ¶¶ 12, 20, 23).)  Moreover, the Declaration of Lindsay Marshall specifically set forth that the Benson, McLaughlin, and Hyde Articles could be located using the keywords: vote, voting, ballot, election, and/or voting.  (Doc. No. 46 ¶¶ 20, 23.)  However, in the present Motion, the Defendants additionally present the McGrath Article in support of their obviousness contentions.  (Doc. No. 162-3.)  While the McGrath Article is a response to the Hyde Article, the Defendants fail to provide evidence regarding whether the McGrath Article could have been located using particular keywords in the Risk Digest search tool, or whether the article otherwise would have been available to persons interested and ordinarily skilled in the art exercising reasonable diligence to locate it.  *Cf. In re Lister*, 585 F.3d 1307, 1315-16 (Fed. Cir. 2009) (relying on undisputed evidence that users of the Westlaw and Dialog databases could locate the disputed manuscripts using specific search terms relevant to the invention at issue in finding that the reference was publicly accessible and therefore a printed publication within the meaning of 35 U.S.C. § 102).  Accordingly, the Court concludes that the Benson, McLaughlin, and Hyde Articles qualify as prior art for the reasons stated in the Order entered

---

[4] To the extent VVI objects to the Shamos Obviousness Declaration (Doc. No. 162) and the Supplemental Shamos Declaration (Doc. No. 170), these objections were previously considered and overruled by the Court in the Order entered on January 11, 2011.  (Doc. No. 174.)

on September 15, 2010. On the other hand, based on the evidence presently in the record currently before the Court, the McGrath Article does not qualify as prior art.[5]

**V. Validity of Claim 49**

The Defendants contend that summary judgment as to the invalidity of claim 49 of the '449 patent is appropriate because the claimed method is obvious in view of at least five prior art references alone or in combination. (Doc. No. 161 at 3.) In response, VVI maintains that the Defendants' conclusory expert opinions regarding the obviousness of claim 49 are insufficient to overcome the statutory presumption that claim 49 is valid and non-obvious. (Doc. No. 167 at 16-17.)

Pursuant to 35 U.S.C. § 103, an invention cannot be patented if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art . . . ." 35 U.S.C. § 103(a). Patents are presumed to be valid upon issuance, 35 U.S.C. § 282, and included within that presumption of validity is a presumption of non-obviousness, *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 714 (Fed. Cir. 1984). Thus, a party seeking to invalidate a patent based on obviousness bears the burden of proving "by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007).

---

[5] VVI contends that the Defendants' failure to challenge the validity of claim 49 through the administrative proceedings offered by the PTO supports a finding that the Risk Digest articles do not qualify as prior art. However, the Defendants are under no obligation to administratively challenge the validity of claim 49. Moreover, it was VVI who initiated the present action. (*See* Doc. No. 1.)

The ultimate conclusion of whether a claimed invention would have been obvious is a question of law based on underlying findings of fact. *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986). The underlying factual inquiries include: (1) the scope and content of the prior art; (2) differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations such as commercial success and satisfaction of a long felt need. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966). Summary judgment of obviousness is appropriate where "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007).

### A. Obviousness of Claim 49 in View of the Benson Article

In the present case, the Defendants maintain that claim 49 would have been obvious to a person of ordinary skill in the art in November 2000 in view of the Benson Article.[6] (Doc. No. 161 at 12.) VVI disagrees, arguing that Shamos' expert opinions are insufficient to overcome the presumption that claim 49 is valid and non-obvious. (Doc. No. 167.)

#### 1. Factual Inquiries

The ultimate conclusion of whether a claimed invention would have been obvious is a question of law based on underlying findings of fact. *Hybritech Inc.*, 802 F.2d at 1375. Thus, in analyzing the validity of claim 49, the Court will first address the underlying findings of fact, including: (1) the scope and content of the prior art; (2) differences between the claims and the prior

---

[6] The Benson Article was previously found to qualify as prior art for the purpose of analyzing the validity of the '449 patent. (Doc. No. 155 at 9.) To the extent VVI continues to contend that the Benson Article does not qualify as prior art, those arguments are rejected for the reasons stated in the September 15 Order, (*id*. at 8-9), and Section III of the present Order.

art; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations such as commercial success and satisfaction of a long felt need. *Graham*, 383 U.S. at 17.

### i. Scope and Content of the Benson Article

The preamble to claim 49 states that the claim is "[a] method of voting providing for self-verification of a ballot." The Benson Article states that it presents a "solution to the problem of checking accuracy." (Doc. No. 162-1 at 2.) The solution the Benson Article provides to the problem of checking accuracy involves self-verification of a ballot by a voter.[7] (*Id.*) In light of these statements, Shamos contends that the Benson Article discloses a method of voting providing for self-verification of a ballot. (Doc. No. 162 ¶ 28.) VVI presents no evidence to the contrary.

The first step of the method in claim 49, step (a), recites "voting by a vector using a computer voting station." Shamos offers his expert opinion that one of ordinary skill in the art would understand the Benson Article to refer to a computer voting station, despite the fact that the word "computer" is not used in the body of the article itself. (Doc. No. 162 ¶ 29.) In support of this opinion, Shamos notes that the Benson Article is titled "Computerized Voting," and that the terms "electronic vote," "menu-driven," "electronically forwarded," and "electronic tally" used in the Benson Article imply a computerized device. (*Id.*) Benson also states that the subject matter of the Risk Digest, in which the Benson Article appears, is the risks associated with using computer systems, as evidenced by the Risk Digest's subtitle "Forum on Risks to the Public in Computers and Related Systems." (*Id.*) Finally, Shamos contends that it would have been obvious in the year 2000 to use a computer as a voting station in light of the fact that DRE machines, which are computerized voting

---

[7] The Benson Article states that a "[v]oter scans the printed card and is asked whether it is accurate." (Doc. No. 162-1 at 3.)

stations, had been in use in the United States for a least eight years before the Benson Article was published. (*Id.*) While VVI disagrees with Shamos' conclusion, arguing that the terms used in the Benson Article do not necessarily imply a computerized device because they could imply the use of a telegraph or radio, VVI provides no evidence to support this contention.

The remainder of step (a) recites a computer voting station "programmed to present an election ballot, accept input of votes from the vector according to the election ballot, [and] temporarily store the votes of the voter." Shamos opines that the Benson Article discloses a computer voting station programmed to present an election ballot because the article refers to the use of "a menu-driven ballot on the screen," which can only be represented by a computerized device. (Doc. No. 162 ¶ 30.) While VVI argues that the use of a "menu-driven ballot on the screen" can be achieved by an electrical light display of options for a manually operated electrical switch, VVI provides no evidence in support of this assertion, and the Defendants have established that the Benson Article discloses a computer voting station. Shamos next provides his opinion that the Benson Article discloses a computer voting station that accepts input of votes from the voter by stating that "[t]he voter fills in his or her choices." (*Id.* ¶ 31.) Shamos also notes that voting systems necessarily accept input from voters. (*Id.*) VVI presents no evidence to the contrary. Finally, Shamos offers his opinion that the temporary storage of votes is implied in the Benson Article because "[i]n order to be able to print out the voter's choices, as the Benson Article discloses, it is necessary to store the vote selections, at least temporarily, from the time they are input until the time they are printed." (*Id.*) Again, VVI presents no evidence to the contrary.

Step (b) of claim 49 recites the "printing of the votes of the voter from the votes temporarily stored in the computer for the voting station." The Benson Article states that "the voter pushes a

button to confirm the ballot and a printer prints [a] card ballot, which is retained behind a transparent screen." (Doc. No. 162-1 at 2.) Shamos opines that this statement is sufficient to disclose the printing step in step (b), and VVI presents no evidence to the contrary. (Doc. No. 162 ¶ 32.)

Step (c) of claim 49 recites the "comparison by the voter as to whether a printed ballot is acceptable or unacceptable." Step (d) recites a "decision by the voter as to whether a printed ballot is acceptable or unacceptable," and step (e) recites "inputting of information as to the acceptability of a printed ballot by the voter." Shamos offers his opinion that the Benson Article discloses the comparison recited in step (c), the decision recited in step (d), and the inputting of information recited in step (e) by stating that a "[v]oter scans the printed card and is asked whether it is accurate. At this point, if it is not, a REVISE or CANCEL button is pushed and the process starts over with nothing recorded. When the screen and the card match the voter's intentions, a second CONFIRM button is pushed and the card is ejected, while the vote is electronically forwarded." (Doc. No. 162 ¶¶ 33-35.) VVI presents no evidence to the contrary.

The final step of claim 49, step (f), recites the "submission of an acceptable printed ballot for tabulation." The Benson Article recites that "[t]he voter takes the card out of the booth and drops it in a ballot box . . . [and] the cards would be in a ballot box, where they could be counted by hand." (Doc. No. 162-1 at 3.) The article goes on to note that "the cards in the ballot box would be counted by hand to confirm the 'electronic tally' kept by the computer." (*Id*.) Shamos opines that these statements disclose step (e) of claim 49, and VVI provides no evidence to the contrary. (Doc. No. 162 ¶ 36.)

### ii. Differences Between Claim 49 and the Prior Art

Defendants next argue that every element of claim 49 is present in the prior art. (*Id.*) In support of this argument, Defendants cite Shamos' expert opinion that the Benson Article discloses each limitation of claim 49. (Doc. No. 161 at 11.) While the Defendants recognize that the Benson Article does not use the express words "computer voting station" or expressly disclose the temporary storage of votes, the Defendants present Shamos' expert opinion, discussed in the previous Section, that the Benson Article refers to a computer voting station and necessarily involves the temporary storage of votes. (Doc. No. 162 ¶ 37.) While VVI argues that the Benson Article does not necessarily disclose the use of a computerized device or temporary storage, VVI provides no evidence in support of these assertions. Accordingly, the Court finds that there are no differences between the claimed invention and the Benson Article.

### iii. Level of Ordinary Skill in the Art

Defendants contend that a person of ordinary skill in the art in November 2000 would have been familiar with the voting systems in use, including the electronic voting devices available at the time, such as DREs. According to the Defendants, this person would also have had an enhanced understanding of computers, printers, memory, optical scanners, and other electronic equipment regularly used in electronic voting equipment, and would understand that anything printed by a computer is at least temporarily stored. (Doc. No. 161 at 11.) VVI does not present any evidence or argument to dispute the Defendants' characterization of a person of ordinary skill in the art. Accordingly, the Court adopts the Defendants' characterization of a person of ordinary skill in the art.

### iv. Secondary Considerations

Secondary considerations such as "commercial success, long felt but unsolved need, failure of others, etc. might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented" and therefore "may have relevancy" as indicia of non-obviousness. *Graham*, 383 U.S. at 17-18. However, in the present case, VVI has not presented evidence of secondary considerations.

### 2. Legal Determination of Obviousness

Pursuant to 35 U.S.C. § 103, a patent claim is invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." Summary judgment of obviousness is appropriate if "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007).

In the present case, even viewing the evidence in the light most favorable to VVI, summary judgment is appropriate for the Defendants. The content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute. There are no material disputes relating to differences between claim '49 and the Benson Article, and there is no evidence in the record regarding secondary considerations. More specifically, the evidence currently in the record does not create a genuine issue of material fact relating to whether a person of ordinary skill in the art would have understood the Benson Article to disclose a computer voting station capable of temporarily storing the votes of the voters. *Cf. Tyco Healthcare Group LP v. Biolitec, Inc.*, No. C-08-3129 MMC, 2010 WL 3059518 at *1 (N.D. Cal. Aug. 3, 2010) (finding summary judgment was not

appropriate where plaintiff submitted evidence that, if credited by the trier of fact, would support a finding that a person of ordinary skill in the art would not understand the prior art to disclose the elements of the claim in dispute).

In light of these findings, it is apparent that a person of ordinary skill in the art at the time of the invention would have viewed the Benson Article as disclosing each and every element of claim 49, which presents nothing more than a predictable use of prior art elements according to their established findings. *See Friskit, Inc. v. Real Networks, Inc.*, 306 F. App'x 610, 616 (Fed. Cir. 2009) (citing *KSR*, 550 U.S. at 422) (finding that the predictable use of prior art elements according to their established functions is likely to be within the grasp of one of ordinary skill in the art). Thus, notwithstanding the presumption that claim 49 is valid, the Court concludes that clear and convincing evidence supports a finding that the differences between the subject matter of claim 49 and the Benson Article are such that the subject matter as a whole would have been obvious to a person of ordinary skill in the art at the time the invention was made. *See KSR*, 550 U.S. at 427 ("Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate."). Accordingly, claim 49 of the '449 patent is invalid as obvious.

### B. Obviousness of Claim 49 in View of the Remaining Prior Art

Defendants contend that claim 49 of the '449 patent is also invalid as obvious in light of the remaining Risk Digest articles and the FEC Standards. However, having determined that claim 49 is obvious in light of the Benson Article, the Court need not address these contentions.

### Conclusion

Based on the foregoing, the Motion and Memorandum in Support of Invalidity of Claim 49 of U.S. Patent No. RE40,449 by Premier Election Solutions, Inc. and Diebold Incorporated (Doc. No. 161, filed Nov. 9, 2010) is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** to the extent it seeks a finding that claim 49 of the '449 patent is invalid as obvious. The Motion is **DENIED** in all other respects.

**DONE** and **ORDERED** in Orlando, Florida on January 24, 2011.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Parties