**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**VOTER VERIFIED, INC.,**

      **Plaintiff,**

**-vs-**                                                     **Case No. 6:09-cv-1968-Orl-19KRS**

**PREMIER ELECTION SOLUTIONS, INC.,**
**DIEBOLD INCORPORATED,**

      **Defendants.**
_____

## ORDER

This case comes before the Court on the following:

1. Motion for Summary Judgment of Non-Infringement of Claims 1-48, 50-55, 57-84, and 86-92 by Premier Election Solutions, Inc. and Diebold, Incorporated (Doc. No. 218, filed June 9, 2011);

2. Response to the Fourth Motion for Summary Judgment of Diebold, Incorporated and the Third Motion of Summary Judgment of Premier Election Solutions, Inc. (Doc. No. 223, filed July 9, 2011); and

3. Defendants' Reply in Support of Their Respective Motion for Summary Judgment of Non-Infringement by Premier Election Solutions, Inc. and Diebold, Incorporated (Doc. No. 230, filed July 24, 2011).

**Background**

**I. Procedural History**

On November 19, 2009, Voter Verified, Inc. ("VVI") filed the present action against Premier Election Solutions, Inc. ("Premier") and Diebold Incorporated ("Diebold"). (Doc. No. 1.) The Complaint, seeking both damages and injunctive relief, alleges that Premier and Diebold (collectively "Defendants") willfully infringed United States Patents Nos. 6,769,613 ("the '613 patent") and RE40,449 ("the '449 patent"). (*Id.* at 11-12.) Defendants deny VVI's allegations of infringement and seek a declaratory judgment that: (1) the '613 and the '449 patents are invalid pursuant to 35 U.S.C. §§ 101, 102, 103, and 112; (2) the '613 patent is invalid pursuant to 35 U.S.C. § 251; and (3) Defendants are not infringing and have never infringed the '613 and '449 patents. (Doc. No. 16, filed Jan. 16, 2009; Doc. No. 103, filed Apr. 28, 2010.)

On April 28, 2010, VVI filed a Motion for Summary Judgment against Premier arguing that there were no genuine issues of material fact relating to the direct infringement of claim 49 of the '613 and '449 patents. (Doc. No. 106 at 1.) VVI also moved for summary judgment against Premier on the validity of the asserted patents and the issue of intervening rights. (*Id.*) On May 28, 2010, Defendants filed a Cross Motion for Summary Judgment, contending that: (1) the '613 patent cannot be infringed because it was surrendered; (2) claims 49, 56, 85, 93, and 94 of the '449 patent are not infringed; and (3) claims 49, 56, 85, 93, and 94 of the '449 patent are invalid as anticipated under 35 U.S.C. § 102. (Doc. No. 124.) VVI's Motion for Summary Judgment was granted in part and denied in part. (Doc. No. 155 at 34-36.) The Motion was granted to the extent VVI sought a finding against Premier that: (1) the claims of the '449 patent are not invalid under 35 U.S.C. § 101; (2) the claims of the '449 patent, other than claim 94, are not invalid under 35 U.S.C. § 112; and (3) claims 1-48,

50-84, and 86-92 are not invalid under 35 U.S.C. § 102. (*Id.* at 34.) Defendants' Cross Motion for Summary Judgment was also granted in part and denied in part. (*Id.*) The Motion was granted to the extent the Defendants sought a finding that: (1) the '613 patent was surrendered to the United States Patent and Trademark Office ("PTO"); (2) the AccuVote-TSX System does not infringe claims 49, 56, 85, and 93 of the '449 patent; (3) claim 94 of the '449 patent is invalid under 35 U.S.C. § 112; and (4) the enumerated Risks Digest articles qualify as prior art. (*Id.* at 34-35.) Defendants were also granted the requested leave to file a supplemental summary judgment motion addressing the issue of obviousness.

On November 9, 2010, Defendants filed a Motion and Memorandum in Support of Invalidity of Claim 49 of U.S. Patent No. RE40,449. (Doc. No. 161.) The Motion was granted to the extent Defendants sought a finding that claim 49 of the '449 patent is invalid as obvious under 35 U.S.C. § 103. (Doc. No. 177 at 20.) However, because Defendants' Motion did not address the obviousness of the remaining claims, the Court also granted VVI's Second Motion for Summary Judgment to the extent it sought a finding against Premier that claims 1-48, 50-84, and 86-92 are valid. (*Id.* at 22.)

On June 9, 2011, Defendants filed the present Motion for Summary Judgment of Non-Infringement of Claims 1-48, 50-55, 57-84, and 86-92 of U.S. Patent No. RE40,449 and Memorandum in Support. (Doc. No. 218.) In the Motion, Defendants contend that no product or combination of products sold by the Defendants infringe claim 1, claim 25, or any dependent claim of the '449 patent. (*Id.*) VVI responded in opposition to Defendants' Motion on July 9, 2011, (Doc. No. 223), and Defendants filed a reply on July 24, 2011. (Doc. No. 230.)

**II. The Asserted Patents**

The patents at issue in the present case include the '613 and '449 patents (collectively, the "Asserted Patents"). The '613 patent issued on August 3, 2004. (Doc. No. 60 at 2.) On February 14, 2005, a reissue application for the '613 patent was filed. (*Id*.) On August 5, 2008, the '613 patent was surrendered to the PTO and reissued as the '449 patent. (*Id*. at 3.) VVI is the owner by assignment of the '613 and '449 patents. (*Id.* at 4.)

In general, the '449 patent describes a computer voting system that displays ballots for voting, instructs voters to input their selections, prints the votes of the voters, instructs the voters to review the printed ballots for accuracy, and then instructs the voters to submit acceptable printed ballots for tabulation. By way of example, claim 1 of the '449 patent recites:

> 1. A self-verifying voting system comprising: one or more voting stations comprising:
> (a) one or more computer programs which operate in a computer to display general voting instructions, at least one election ballot showing the candidates and issues to be voted on, and directions to the voter for operation of the system; present the election ballot for voting and input of votes by the voter;
> accept input of the votes from the voter;
> print out the election ballot according to which the voter voted with the votes of the voter printed thereon, so that the votes of the voter are readable on said election ballot by the voter and readable by a tabulation machine;
> record the votes in the computer; and
> compare the votes read by a ballot scanning machine with the votes recorded in the computer;
> (b) a computer with at least one display device, at least once device to accept voting input from a voter, at least one data storage device, and sufficient memory to provide for the operation of said computer program in which said computer program runs;
> (c) a printer connected to said computer for printing the election ballot according to which the voter voted;
> (d) a ballot scanning means for reading the votes on the printed ballot printed according to the election ballot which the voter voted so that the votes shown on the printed ballot are compared by the computer program with the votes recorded in the computer for the voter;
> (e) means for connecting said ballot scanning means to said computer; and

>     a means for tabulating the printed ballots generated by said one or more voting
>     stations.

### III. The AccuVote-TSX System

The AccuVote-TSX System is a direct recording electronic device comprised of an AccuVote-TSX terminal connected to an AccuView Printer Module ("AVPM"). (Doc. 218-2 ¶ 5.) The AccuVote-TSX terminal prompts voters to insert a voter access card to begin voting and then allows a voter to vote by touching graphics displayed on a touch screen interface. (*Id.* ¶ 6.) When the AVPM is used in conjunction with the AccuVote-TSX terminal, voters are prompted to print their ballots by touching the Print Ballot graphic. (*Id.* ¶ 7.) The AVPM then prints a paper ballot containing the names of each candidate selected by the voter, and the touch screen interface of the AccuVote-TSX terminal displays a summary of the voter's selections. (*Id.*) The voter is then directed to review the printed ballot for accuracy and is given the option to cast or reject the ballot. (*Id.*) Once the ballot has been cast, an image of the ballot is stored on an internal memory card located in the AccuVote-TSX terminal. (*Id.* ¶ 9.) The paper reel on the ballot printer of the AVPM advances each time a voter votes, and the printed ballots are taken into a locked "take-up real." (*Id.* ¶ 10.) At the end of the day, the electronic votes stored in the AccuVote-TSX terminal are transferred to the election headquarters. (*Id.* ¶ 12.) The canisters holding the "take-up reals" are collected and saved for audit purposes. (*Id.* ¶ 13.)

**Standard of Review**

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). A dispute of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. A dispute of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In addition, when a claimant fails to produce

"anything more than a repetition of his conclusory allegations," summary judgment for the movant is "not only proper but required." *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

**Analysis**

**I. Independent Claims 1 and 25**

Defendants first contend that they do not infringe independent claims 1 and 25 of the '449 patent because no product or combination of products sold by the Defendants uses a ballot scanning means interfaced with a computer program to compare the votes on a printed ballot to the votes recorded in a computer. (Doc. No. 218 at 4, 7.) In response, VVI maintains that the AccuVote-TSX System infringes claim 1 and claim 25 of the '449 patent because a voter using the system performs the element of comparing the votes on a printed ballot to the votes recorded in a computer. (Doc. No. 223 at 6-7.)

An infringement analysis involves two steps. First, the court must construe the claims, a question of law in which the scope and meaning of the asserted claims is defined. *Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1341 (Fed. Cir. 2003). The claims as construed are then compared to the accused device. *Id.* This is a question of fact. *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 692 (Fed. Cir. 1998). In order to establish patent infringement, a patentee must demonstrate by a preponderance of the evidence "that an accused product embodies all limitations of the claim either literally or by the [doctrine of equivalents]." *Amgen Inc. v. F. Hoffman-LA Roche Ltd*, 580 F.3d 1340, 1374 (Fed. Cir. 2009) (citing *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1379 (Fed. Cir. 2008)).

To literally infringe a claim, "every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).

"A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method." *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007) (citations omitted). Equivalents are assessed on a limitation-by-limitation basis. *Id*. at 1328 (citing *Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996)).

Defendants maintain that they do not infringe independent claims 1 and 25 of the '449 patent either literally or under the doctrine of equivalents because no product or combination of products sold by the Defendants meets element (d) of claim 1 or element (e) of claim 25, which are identical ("Contested Elements"). The Contested Elements recite:

> a ballot scanning means for reading the votes on the printed ballot printed according to the election ballot which the voter voted so that the votes shown on the printed ballot are compared by the computer program with the votes recorded in the computer for the voter

Both VVI and the Defendants maintain that the Contested Elements are set forth in the "means-plus-function" format,[1] (Doc. No. 218 at 5; Doc. No. 223 at 2), a claim format that recites "a function to be performed rather than definite structure or materials for performing that function." *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003). The use of the term "means" in the Contested Elements creates a presumption that § 112, ¶ 6 has been invoked.

---

[1] Section 112, paragraph 6 provides that "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6.

*See Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1361 (Fed. Cir. 2000) (finding that the use of the term "means" in a claim limitation creates a presumption that § 112, ¶ 6 has been invoked). This presumption is further supported by the fact that the elements recite a function but do not recite any structure for performing that function. *Id.* (noting that the presumption may be overcome if the properly construed claim limitation recites a sufficient structure to perform the claimed function). Furthermore, the parties do not dispute the construction of the Contested Elements as means-plus-function limitations. Accordingly, the Court finds that the Contested Elements are recited in the "means-plus-function" format under § 112, ¶ 6.

The proper construction of a means-plus-function limitation involves two steps. First, the court must identify the claimed function. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1324 (Fed. Cir. 2001) (citing *Kemco Sales*, 208 F.3d at 1361). "In identifying the function of a means-plus-function claim, a claimed function may not be improperly narrowed or limited beyond the scope of the claim language." *Lockheed Martin*, 324 F.3d at 1319 (citing *Micro Chem. Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999). Once the claimed function is identified, the patent must be examined to identify the corresponding structure disclosed in the specification that performs the claimed function. *Telemac Cellular*, 247 F.3d at 1324. "In order to qualify as corresponding, the structure must not only perform the claimed function, but the specification must clearly associate the structure with performance of the function." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002) (citation omitted).

Having determined that the Contested Elements fall under § 112, ¶ 6, the Court must begin the construction of these elements by identifying the claimed function. The plain language of the Contested Elements recites the function as "reading the votes on the printed ballot printed according

to the election ballot which the voter voted so that the votes shown on the printed ballot are compared by the computer program with the votes recorded in the computer for the voter." While VVI contends that the function is limited to "reading the votes on the printed ballot printed according to the election ballot," VVI provides no argument to support this truncated reading of the claimed function, and such a reading is not supported by the plain language of the Contested Elements which explicitly describes the claimed function to include reading the printed ballot in a manner that permits the computer program to compare the printed votes with the votes recorded by the computer. *See JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 (Fed. Cir. 2005) (finding that "a court may not construe a means-plus-function limitation by adopting a function different from that explicitly recited in the claim" or by "importing the functions of a working device into the specific claims, rather than reading the claims for their meaning independent of any working embodiment" (quotation omitted)). Moreover, the computer program comparison portion of the claimed function adds substance to the claim by further describing the manner in which the ballot scanning means is to read the votes on the printed ballot, specifically, in a manner that allows the votes to be compared to the votes recorded in the computer by a computer program. *Cf. Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1172 (Fed. Cir. 1993) (declining to construe the function to include the claim language that merely described the inherent results of the claimed function). Therefore, in accordance with the plain language of the claims, the Court construes the function recited in the Contested Elements as reading the votes on the printed ballot printed according to the election ballot which the voter voted so that the votes shown on the printed ballot are compared by the computer program with the votes recorded in the computer for the voter.

The structure corresponding to the claimed function of the Contested Elements must next be identified. Defendants contend that the proper structure is a ballot scanning machine interfaced with a computer using a computer program. (Doc. No. 218 at 6.) In response, VVI argues that the while Defendants "correctly identified the structure," they failed to identify an alternative structure, comparison by the voter. (Doc. No. 223 at 2-4.)

The specification of the '449 patent provides the following descriptions of structure corresponding to the claimed function:

> A printed ballot produced by the computer voting station which shows the votes of a voter is then presented to the voter and either compared by the voter, or by operation of the computer program for the voting system with a ballot scanning machine, the machine capable of reading ballot selections, with the votes of the voter temporarily stored in the computer. col. 2 ln. 25-33

> Also connected to the computer in the voting station may be a machine which is capable of reading ballot selection markings previously described, either directly, through a master computer, or network to which the computer for the voting station is connected. Such a machine will hereinafter be referred to as a "ballot scanning machine" and is essentially an electro-optical sensing device from the well-known art. Such a ballot scanning machine may be interfaced with the computer in the voting station to scan the paper ballot printed by the printer as voted by the voter. col 3. ln. 54-64.

> The printed ballot produced by the computer voting station which shows the votes of a voter presented to the voter may either be compared by the voter, or by operation of the computer program for the voting system with a ballot scanning machine, the machine capable of reading ballot selection markings, or by both methods, with the votes of the voter temporarily stored in the computer. col. 3 ln. 64 - col. 4 ln.4.

> The result of the comparison is then judged acceptable or unacceptable by the voter, in the case of comparison by the voter, or by the computer program for the voting system, in the case of comparison with the ballot as read by the ballot scanning machine in the voting station. . . . col. 4 ln. 7-11.

> . . . voter observes that the printed ballot correctly represents the votes of the voter, the ballot may be submitted by the voter for processing to a ballot scanning machine interfaced with that voting station. Such processing may proceed in the computer

> program by comparison of the votes represented by the ballot selection marking on the printed ballot with the votes stored in the computer for the voting station. col 5 ln. 22-28.

In this manner, the specification repeatedly discloses the structure corresponding to performing the claimed function as a ballot scanning machine interfaced with a computer program that compares the votes read by the ballot scanning machine with the votes recorded in the computer. Such a ballot scanning machine interfaced with the computer program described specifically in element (a) of claims 1 and claim 25 is capable of performing the claimed function and identified in the specification with the performance of the function. *See Cardiac Pacemaker*, 296 F.3d at 1113. ("[I]n order to qualify as corresponding, the structure must not only perform the claimed function, but the specification must clearly associate the structure with the performance of the function.").

VVI contends that the specification also discloses comparison by the voter as an alternative structure corresponding to the claimed function. (Doc. No. 223 at 2-3.) VVI's argument fails for two reasons. First, "a human being cannot constitute a 'means.'" *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1300 (Fed. Cir. 2005) (citing *In re Prater*, 415 F.2d 1393, 1398 (C.C.P.A. 1969) (finding defendants' arguments that the structure corresponding to a means can entail human participation or a human being manually operating an apparatus to be "misplaced"). Thus, means-plus-function claims are not construed to "cover structures in which a human being substitutes for a part of the claimed structure." *Davies v. United States*, 31 Fed. Cl. 769, 778-79 (Fed. Cl. 1994) (citing *Brown v. Davis*, 116 U.S. 237, 249 (1886) (finding that even if a human being could perform the claimed function manually, the accused device does not infringe the patent where the accused device does not itself perform the function). Thus, the means-plus-function language in the Contested Elements will not be construed to cover a human being performing the claimed function.

Furthermore, even assuming a human being was a permissible structure under § 112, ¶ 6, the specification fails to disclose a human being performing the claimed function in its entirety. The claimed function includes not only reading the votes on the printed ballot and the votes recorded in the computer, but reading the votes in a manner that allows a computer program to compare them. The specification does not disclose a human being reading the printed votes and the votes recorded by the computer in a manner that would allow for comparison "by the computer program."[2] Accordingly, the Court declines to construe the structure corresponding to the claimed function to include a human being as an alternative equivalent. Instead, the Court finds the only structure corresponding to the claimed function to be a ballot scanning machine interfaced with the computer program described in element (a) of claims 1 and 25 that compares the votes read by the ballot scanning machine with the votes recorded in the computer.

In order to infringe claim 1 or claim 25 of the '449 patent, the relevant structure in the Accuvote-TSX System must perform either the identical function claimed in the Contested Elements or a substantially similar function. *See Kemco Sales*, 208 F.3d at 1364. The undisputed evidence in the record demonstrates that the Accuvote-TSX System itself is incapable of comparing the votes on the printed ballots to the votes recorded in the computer. (Doc. No. 218-2.) The Accuvote-TSX System is designed to provide a voter with the opportunity to review a printed ballot and cast or reject that ballot based on its conformity with the votes recorded by the computer; there is no evidence in the record to establish that the Accuvote-TSX System is similarly capable of making this comparison

---

[2] In other claims of the '449 patent, the comparison of the votes on the printed ballot card to the votes stored in the computer is specifically claimed. For example, element (c) of claim 49 recites the method step of: "comparison *by the voter* of the printed votes with the votes temporarily stored in the computer for the voting station." (emphasis added).

as required by claims 1 and 25. (Doc. No. 218-2 ¶ 7.) In fact, the uncontested evidence in the record demonstrates that the Accuvote-TSX System does not include any type of ballot scanning machine or other device capable of reading the printed votes.[3] While VVI contends that the actions of the voter are equivalent to the function of a ballot scanning device, infringement does not result where the actions of a human being are substituted for the actions of the accused device. The accused device must itself perform the function. *Davies*, 31 Fed. Cl. at 778-79 (finding that even if a human being could perform the claimed function manually, the accused device does not infringe the patent where the accused device does not itself perform the function). Because the Accuvote-TSX System is not capable of comparing the votes of a printed ballot to the votes recorded in the computer, the AccuVote-TSX System is unable to perform either the identical function or a function substantially similar to the function claimed in the Contested Elements. Accordingly, Defendants' Motion for Summary Judgment will be granted to the extent it seeks a finding that the Defendants do not infringe claim 1 or claim 25 of the '449 patent, either literally or under the doctrine of equivalents.[4]

**II. Dependent Claims**

Defendants next argue that in light of the Court's findings on summary judgment regrading claims 1, 25, 49, 56, 85, and 93, Defendants do not infringe any independent claims of the '449 patent and therefore do not infringe any dependant claims as a matter of law. (Doc. No. 218 at 2.) VVI

---

[3] VVI provides no argument or evidence to the contrary, conceding that the AccuVote-TSX System does not include "any form of ballot scanning machine." (Doc. No. 223 at 6.)

[4] VVI does not contend that any other product or combination of products attributable to the Defendants infringes the claims of the '449 patent.

provides no response in opposition, conceding that the "Defendants correctly state the law of the Federal Circuit." (Doc. No. 223 at 8.)

"A conclusion of noninfringement as to [an] independent claim [] requires a conclusion of noninfringement as to the dependent claims."[5] *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 n.5 (Fed. Cir. 2008) (citing *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007)); *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1302 (Fed. Cir. 2002) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to be infringed." (quotation omitted)). Therefore, where an accused device has been found not to infringe an independent claim, the device also does not infringe the claims depending from the noninfringing independent claim as a matter of law. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1325 (Fed. Cir. 2009) (finding that because independent claim 27 was not infringed by the accused device, dependent claims 28-30 also were not infringed).

In the present case, the Court has determined that the Defendants do not infringe independent claims 1, 25, 49, 56, 85, and 93 of the '449 patent. In light of this finding and the fact that VVI does not contend that any system other than the Accuvote-TSX System infringes the claims of the '449 patent, the Court concludes that the Defendants also do not infringe any of the claims depending from

---

[5] In *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546 (Fed. Cir. 1989), the Federal Circuit explained that: "One may infringe an independent claim and not infringe a claim dependent on that claim. The reverse is not true. One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim." *Id.* at 1552.

these independent claims, specifically claims 2-24, 26-48, 50-55, 57-84, and 86-92.  Accordingly, the Defendants do not infringe any valid claims of the '449 patent.[6]

**Conclusion**

Based on the foregoing, the Motion for Summary Judgment of Non-Infringement of Claims 1-48, 50-55, 57-84, and 86-92 by Premier Election Solutions, Inc. and Diebold, Incorporated (Doc. No. 218, filed June 9, 2011) is **GRANTED**.

**DONE** and **ORDERED** in Orlando, Florida on July 28, 2011.

*[Signature]*

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[6] There are 94 claims in the '449 patent.  The Court previously determined, on summary judgment, that claim 94 of the '449 patent is invalid pursuant to 35 U.S.C. § 112.  (Doc. No. 155.)